## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ENCHANTEDMOB, INC., | |
|      Plaintiff, | Case No. 22-cv-02095 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
|      Defendants. | |

### COMPLAINT

Plaintiff EnchantedMob, Inc. ("Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products that are unauthorized copies of the federally registered Poppy Playtime copyrighted designs (the "Unauthorized Poppy Playtime Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale Unauthorized Poppy Playtime Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Poppy Playtime Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' unlawful operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' infringement of the registered Poppy Playtime copyrighted designs, as well as to protect unknowing consumers from purchasing Unauthorized Poppy Playtime Products over the Internet. Plaintiff has been and continues to be irreparably damaged through the infringement of the registered Poppy Playtime copyrighted designs as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.      Plaintiff EnchantedMob, Inc. is a corporation with its principal place of business in St. Louis, Missouri.

5.      Plaintiff is a digital entertainment company that creates and distributes high quality animated content on several platforms, but most predominately on Steam. Plaintiff's focus is on the production and distribution of digital content and playable video games. Most notably, Plaintiff developed and released the world-famous video game, Poppy Playtime. Plaintiff released the first chapter of Poppy Playtime, "A Tight Squeeze," on October 12, 2021.

6.      Poppy Playtime is a first-person survival horror game that involves an unnamed protagonist who is called upon to investigate a mystery at a toy factory abandoned by the fictional toy company Playtime Co. The player must solve puzzles in order to progress further, all while avoiding the game's main antagonist, Huggy Wuggy, a large humanoid figure that once acted as the mascot of Playtime Co. Huggy Wuggy and other characters associated with the game have gained significant popularity among those in the gaming community and abroad. Some of these famous characters are displayed in the following chart:

| Huggy Wuggy |  |
| --- | --- |



| | |
|---|---|
| Mommy Long Legs | |
| Poppy | |
| Kissy Missy | |

7.     In addition to the popular video game, a variety of licensed Poppy Playtime products are available, including stuffed toys, posters, and clothing (collectively, the "Poppy Playtime Products"). Poppy Playtime Products typically include at least one of the registered Poppy Playtime copyrighted designs.

8.     Poppy Playtime Products are distributed and sold to consumers directly through Plaintiff's website at poppyplaytime.com, as well as through authorized retailers in the United States, including retailers in Illinois. Genuine Poppy Playtime Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Poppy Playtime brand.

9.     Long before Defendants' acts described herein, Plaintiff launched the Poppy Playtime video game and its related line of Poppy Playtime Products bearing its now famous Poppy Playtime copyrighted designs.

10.     The Poppy Playtime video game has become a global success that resonates with children and adults worldwide and has gained wide exposure on platforms such as YouTube and Twitch.  For example, playthrough videos of Chapter 1 of Poppy Playtime have received millions of views on YouTube.

11.     The Poppy Playtime characters have gained significant popularity and are invaluable assets of Plaintiff's business.

12.     Plaintiff has registered its Poppy Playtime copyrighted designs (the "Poppy Playtime Copyrighted Designs") with the United States Copyright Office, which are as follows: (1) "HUGGY WUGGY 2D" (U.S. Copyright Registration No. VA0002288105), issued by the Register of Copyrights on February 23, 2022; (2) "MOMMY LONG LEGS 2D" (U.S. Copyright Registration No. VA0002293330), issued by the Register of Copyrights on February 24, 2022; (3) "POPPY" (U.S. Copyright Registration No. VA0002294398), issued by the Register of Copyrights on April 6, 2022; and (4) "KISSY MISSY" (U.S. Copyright Registration No. VA0002295039), issued by the Register of Copyrights on April 4, 2022. A true and correct copy of the record from

the U.S. Copyright Office website for the above-referenced Poppy Playtime Copyrighted Designs is attached hereto as **Exhibit 1**.

13.     Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Poppy Playtime Copyrighted Designs to the public.

14.     Since their first publication, the Poppy Playtime Copyrighted Designs have been used on the Poppy Playtime Products and are featured on Plaintiff's website at poppyplaytime.com.  Poppy Playtime Products featuring the Poppy Playtime Copyrighted Designs are advertised on Plaintiff's website at poppyplaytime.com.

**The Defendants**

15.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**IV. DEFENDANTS' UNLAWFUL CONDUCT**

17.     The success of the Poppy Playtime video game and brand have resulted in significant copying of the Poppy Playtime Copyrighted Designs. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. Plaintiff has identified numerous fully interactive e-commerce stores offering Unauthorized Poppy Playtime Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to U.S. Customs and Border Protection (CBP), most infringing products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 2**). The bulk of infringing products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. *Id.* Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id.*

18.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in

Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186–187.

19.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Unauthorized Poppy Playtime Products to residents of Illinois.

20.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to copy and/or distribute

the Poppy Playtime Copyrighted Designs, and none of the Defendants are authorized retailers of genuine Poppy Playtime Products.

21.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

22.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Poppy Playtime Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

23.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Poppy Playtime Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Unauthorized Poppy Playtime Products were manufactured by and come from a common source and that Defendants are interrelated.

24.   E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25.   Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

26.   Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Poppy Playtime Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use unauthorized copies of the Poppy Playtime Copyrighted Designs in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Poppy Playtime Products into the United States and Illinois over the Internet.

27.   Defendants' use of unauthorized copies of the Poppy Playtime Copyrighted Designs in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Poppy Playtime Products, including the sale of Unauthorized Poppy Playtime Products into the

United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATION
### (17 U.S.C. §§ 106 AND 501)

28.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29.     The Poppy Playtime Copyrighted Designs constitute original works and are copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

30.     Plaintiff is the owner of the Poppy Playtime Copyrighted Designs. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for the Poppy Playtime Copyrighted Designs. The Poppy Playtime Copyrighted Designs are protected by Copyright Registration Nos. VA0002288105, VA0002293330, VA0002294398, and VA0002295039, which were duly issued to Plaintiff by the United States Copyright Office. At all relevant times, Plaintiff has been and still is the owner of all rights, title, and interest in the Poppy Playtime Copyrighted Designs, which have never been assigned, licensed, or otherwise transferred to Defendants.

31.     The Poppy Playtime Copyrighted Designs are published on the Internet and are available to Defendants online. As such, Defendants had access to the Poppy Playtime Copyrighted Designs via the Internet.

32.     Without authorization from Plaintiff, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating the Poppy Playtime Copyrighted Designs on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Poppy Playtime Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Poppy Playtime

11

Copyrighted Designs. Such conduct infringes and continues to infringe the Poppy Playtime Copyrighted Designs in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

33.     Defendants reap the benefits of the unauthorized copying and distribution of the Poppy Playtime Copyrighted Designs in the form of revenue and other profits that are driven by the sale of Unauthorized Poppy Playtime Products.

34.     Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized Poppy Playtime Products that capture the total concept and feel of the Poppy Playtime Copyrighted Designs.

35.     On information and belief, the Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to, Plaintiff's rights.

36.     The Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

37.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Poppy Playtime Copyrighted Designs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. reproducing, distributing copies of, making derivative works of, or publicly displaying the Poppy Playtime Copyrighted Designs in any manner without the express authorization of Plaintiff;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Poppy Playtime Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Poppy Playtime Copyrighted Designs;

c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Poppy Playtime Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the Poppy Playtime Copyrighted Designs and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear the Poppy Playtime Copyrighted Designs;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of infringing goods which bear the Poppy Playtime Copyrighted Designs;

13

3)  As a direct and proximate result of Defendants' infringement of the Poppy Playtime Copyrighted Designs, Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

4)  Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

5)  Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to7 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

6)  Award any and all other relief that this Court deems just and proper.

Dated this 22nd day of April 2022.          Respectfully submitted,


/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Isaku M. Begert
Justin T. Joseph
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
ibegert@gbc.law
jjoseph@gbc.law

*Counsel for Plaintiff EnchantedMob, Inc.*